JUSTIN A. BRACKETT (HI Bar No. 9954)
515 Ward Avenue
Honolulu, HI 96814
Telephone: (808) 377-6778
Email: justinbrackettlaw@gmail.com

*Attorney for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MICHAEL SOTO,<br><br>     Plaintiff,<br><br> v.<br><br>LVNV FUNDING, LLC, NELSON & KENNARD, ATTORNEYS AT LAW, RESURGENT CAPITAL SERVICES, L.P., and DATA SEARCH NY, INC. d/b/a TRAKAMERICA,<br><br>     Defendants. | CIVIL NO. 1:23-CV-00181 DKW-KJM<br><br>PLAINTIFF'S RESPONSE IN OPPOSITION OF DEFENDANTS LVNV FUNDING, LLC, RESURGENT CAPITAL SERVICES L.P., AND NELSON & KENNARD, ATTORNEYS AT LAW'S MOTION FOR SUMMARY JUDGMENT; EXHIBITS F – I; DECLARATION OF STANFORD BROWN; CERTIFICATE OF SERVICE |

**PLAINTIFF'S RESPONSE IN OPPOSITION OF DEFENDANTS LVNV FUNDING, LLC, RESURGENT CAPITAL SERVICES L.P., AND NELSON & KENNARD, ATTORNEYS AT LAW'S MOTION FOR SUMMARY JUDGMENT**

# **TABLE OF CONTENTS**

**Page**

Table of Authorities…………………………………………………………...ii

INTRODUCTION…………………………………………………..………………1

LEGAL STANDARD ………………………………………………………………2

      THE DEFENDANTS ARE ALL LIABLE FOR THE COLLECTION
      EFFORTS OF NELSON AND KENNARD………………………………3

MATERIAL FACTS ARE IN DISPUTE………………………………………..4

      PLAINTIFF'S EMPLOYER DID NOT VERIFY EMPLOYMENT……..4

      PLAINTIFF'S EMPLOYER INTENDED TO GARNISH WAGES……..5

DEFENDANTS' COLLECTION CAUSED PLAINTIFF HARM………………7

DEFENDANTS' WAGE GARNISHMENT AGAINST THE WRONG PERSON
IS UNFAIR AND DECPTIVE AND VIOLATES HAWAI'I LAW…………….8

DEFENDANTS' ILLEGAL ACTIONS VIOLATE THE FDCPA……………...11

THE ELEMENTS OF INVASION OF PRIVACY ARE ESTABLISHED…….14

CONCLUSION……………………………………………………………………20

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-49 (1986), …
…………………………3, 4

*Biederman's of Springfield, Inc. v. Wright*, 322 S.W.2d 892 (Mo.1959)……..14, 15

*Bowden v. Spiegel, Inc*., 96 Cal.App.2d 793, 216 P.2d 571 (1950)…………..14, 15

*Chapman v. Journal Concepts, Inc.*,
528 F. Supp. 2d 1081, 1099 (D. Haw. 2007)…………………………………16

*Dunham v. Portfolio Recovery Assocs., LLC,*
663 F.3d 997, 1002 (8th Cir. 2011)…………………………………………13

*Gasaway v. Nw. Mut. Life Ins. Co.*, 26 F.3d 957, 959 (9th Cir. 1994)......................3

*Gonzalez v. Law Firm of Sam Chandra, APC*, NO: 13-CV-0097-TOR, at *5-7
(E.D. Wash. Sep. 4, 2013)…………………………………………………..13

*Gurrobat v. HTH Corp.*, 133 Hawai'i 1, 21 (2014)………………………………..9

*Hedayati v. Perry L. Firm*, No. SACV160846DOCDFMX,
2017 WL 4864491, (C.D. Cal. Oct. 27, 2017)………………………………14

*Huy Thanh Vo v. Nelson & Kennard*,
931 F. Supp. 2d 1080, 1095 (E.D. Cal. 2013)……………………………14, 15

*La Salle Extension University v. Fogarty*, 126 Neb. 457, 253 N.W. 424,
91 A.L.R. 1491 (1934)………………………………………………………15

*Lyons v. Zale Jewelry Co*., 246 Miss. 139, 150 So.2d 154 (1963)……………14, 15

*Mehau v. Reed*, 76 Hawai'i 101, 111, 869 P.2d 1320, 1330 (1994)…………….16

*Montgomery Ward v. Larragoite*, 81 N.M. 383, 385; 467 P.2d 399, 401; 1970 N.M. LEXIS 1401 (1970) …………………………………………………15

*Nat'l Steel Corp. v. Golden Eagle Ins. Co.*, 121 F.3d 496, 502 (9th Cir. 1997)...…3

*Norris v. Moskin Stores, Inc.*, 272 Ala. 174, 132 So.2d 321 (1961)………….15, 16

*Santiesteban v. Goodyear Tire & Rubber Co*., 306 F.2d 9 (5th Cir. 1962)…14, 15

*SHOPO v. SPJ*, 83 Hawai`i at 398, 927 P.2d at 406 …………………………..18

*Singleton v. Bank of Am., N.A.*, Civil No. 14-00447 DKW-BMK, 2014 WL 6674569, at *4 (D. Hawai'I Nov. 25, 2014)…………………………………16

*State Farm Fire & Cas. Co. v. Willison*, 833 F. Supp. 2d 1200, 1209 (D. Haw. 2011)…………………………………..2

*Swanson v. S. Oregon Credit Serv., Inc.*, 869 F.2d 1222 (9th Cir. 1988)…………………………………...4, 12, 13, 14

*Trishan Air, Inc. v. Fed. Ins. Co*., 635 F.3d 422, 427 (9th Cir. 2011)……………17

*Warta v. Porter, McGuire, & Kiakona, LLP*, 622 F. Supp. 3d 971, 989–90 (D. Haw. 2022)………………………16, 17, 18

*Wilson v. Freitas*, 121 Hawai'i 120, 130, 214 P.3d 1110, 1120 (Ct. App. 2009)……………16, 17

**Statutes**

15 U.S.C. § 1692a(3) ………………………………………………………….13

15 U.S.C. § 1692d ………………………………………………………………14

**Other Authorities**

Restatement (Second) of Torts §§ 652A–E (1977)………………………………16

Restatement (Second) of Torts § 652D (1977)………………………16, 17, 18, 19

Fed. R. Civ. P. 56(a)…………………………………………………………..19

S. Rep. No. 382, 95th Cong. 2d Sess. 4, reprinted in 1977 U.S. Code Cong. & Admin. News 1695, 1699....................................................................12

## <u>INTRODUCTION</u>

Plaintiff Michael Soto never owed LVNV any money. But he has spent more than a year fearful that his security clearance, and his job, was in peril because they sent his employer a writ of garnishment compelling them to take his money and turn it over to the collectors. The Defendants have wrongfully tried to collect money from an innocent man. They kept at it in spite of his calls and pleas that they stop. They kept at it even after this suit was filed.

In their Motion, the Defendants present three arguments: the first two are, basically, that that there is nothing wrong with attempting to garnish the wrong Michael Soto and publicly maintaining a writ of garnishment against him for over a year ("Plaintiff's UDAP claims fail because the garnishment notice did not violate the law…."; "…Plaintiff's FDCPA claim fails because an authorized legal action taken against the wrong individual does not violate the FDCPA…"); and the third is that he does not state a claim for invasion of privacy ("Plaintiff's invasion of privacy claim fails because Plaintiff cannot establish any of its elements." Dkt. 83, Defendants' Motion, p. 1. Defendants' co-conspirator and enabler, Data Search NY, Inc. d/b/a TRAK America, makes the exact same arguments in its Motion. See Dkt. 79.)

Each of these claims rely on two alleged facts: (1) "the wage garnishment request was … based entirely on the employer's erroneous confirmation of

employment."; and (2) "he cannot establish he was injured … as a result of Defendants' actions." See Memo., Dkt. 83-1, p. 2. Defendants claim that Mr. Soto wasn't injured because "Both Plaintiff and his employer immediately recognized that the Garnishment Notice did not pertain to Plaintiff and no funds were garnished." *Id.* at p. 3. As discussed herein, both of the statements Defendants rely upon are disputed.

## **LEGAL STANDARD**

A genuine issue of material fact exists when a reasonable jury could return a verdict for the nonmoving party. "A mere scintilla of evidence in support of the nonmoving party will not suffice; there must be evidence by which a jury could reasonably find for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-49 (1986). "The moving party has the initial burden of identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." *State Farm Fire & Cas. Co. v. Willison*, 833 F. Supp. 2d 1200, 1209 (D. Haw. 2011). "This requires the nonmoving party to go beyond the pleadings and show by her own affidavits, or by the depositions, answers to interrogatories, or admissions on file, that a genuine issue of material fact exists." *Gasaway v. Nw. Mut. Life Ins. Co.*, 26 F.3d 957, 959 (9th Cir. 1994) (internal quotations omitted). Conclusory allegations, without

support, cannot defeat summary judgment. *Nat'l Steel Corp. v. Golden Eagle Ins. Co.*, 121 F.3d 496, 502 (9th Cir. 1997).

Substantive law will identify which facts are material for purposes of summary judgment, as only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes that are irrelevant or unnecessary will not be counted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505 (1986). The least sophisticated debtor standard applies to allegation that debt collector violated Fair Debt Collection Practices Act by making threat to take any action that cannot legally be taken. *Swanson v. S. Oregon Credit Serv., Inc.*, 869 F.2d 1222 (9th Cir. 1988).

## THE DEFENDANTS ARE ALL LIABLE FOR THE COLLECTION EFFORTS OF NELSON AND KENNARD

Defendants LVNV and Resurgent, each argue that they are not responsible for actions taken by the on-the-ground debt collector in this matter, Defendant Nelson and Kennard. This argument is unavailing. Each entity involved in this litigation has the primary purpose of collecting debts, and each, one after the other, works to forward the other's purpose. Nelson works at the direction of TrakAmerica, who in turn works at the direction of Resurgent who, in turn, works at the direction of LVNV.

That the Defendants are debt collectors with cascading principal-agent relationships are well-established in the Plaintiff's Motion for Partial Summary Judgment (Doc. 86), incorporated here by reference.

## MATERIAL FACTS ARE IN DISPUTE

Defendants' motion should be denied because the facts upon which their arguments lay are disputed. Defendants' motion hinges on two facts, which as is shown here, are in dispute. First, they allege they were authorized to pursue garnishment from Plaintiff because Plaintiff's employer verified his place of employment. This is contradicted by the sworn declaration of Mr. Soto's employer that he would never verify employment on the phone and that he does not recall ever from the Defendants on that topic. Second, they claim that Mr. Soto immediately recognized it was not his debt and immediately confirmed that to his employer. This is contradicted by Mr. Soto's testimony, the testimony of his employer, and the significant stress, and harm he suffered in trying to deal with the garnishment over many months.

## PLAINTIFF'S EMPLOYER DID NOT VERIFY EMPLOYMENT

Defendants assert in their motion: "After Plaintiff's employer verified – incorrectly – that Michael Soto with social security number ending in -4238 was an employee…" Dkt. 83-1, Defense Memo. in Support, p. 1. Mr. Soto's employer, Stanford Brown, asserts he does not verify any employees' social security numbers

to callers, not even the last four digits. See attached Declaration of Stanford Brown. Mr. Brown does not recall ever receiving a call from RNN Group. *Id.* Further, Mr. Brown does not verify his employees' names to callers. *Id.* And why would he ever provide an unknown caller the last four digits of his employee's Social Security Number? His business works with top secret projects in high security areas.

Mr. Brown's statements refute the hearsay statements of Scott Mingus and unverified notes of RNN Group. Why would anyone tell some unknown third-party whether an individual worked for them over a quick, unscheduled and unannounced telephone call? Defendants' allegation is unfounded and supported by no admissible evidence.

### PLAINTIFF'S EMPLOYER INTENDED TO GARNISH WAGES

Defendants admit that "N&K served a garnishment notice on Plaintiff's employer." Memo. in Support, p. 1. But then Defendants assert that Mr. Soto "immediately recogniz[ed] that the social security number and address on the garnishment notice did not belong to him, and … immediately confirm[ed] with his employer that the garnishment notice did not pertain to him…" *Id.* Even if true, this conduct still violates the FDCPA. As explained below, the FDCPA was enacted specifically to prevent Defendant from dunning Plaintiff. Furthermore, the facts do not support Defendants' contentions.

Nothing in the facts show that his employer was "immediately" notified the garnishment notice did not pertain to Mr. Soto. In fact, Ms. Brown testified that she intended to comply with the Order she received and garnish Mr. Soto's wages. She called N&K to determine the correct amount to withhold from Mr. Soto's next paycheck. Exhibit F, Depo. of Kristine Brown, p. 15, ln. 7-15. She was prepared to send them a payment. *Id.* She understood the Writ of Garnishment to be a Court Order that she must comply with. She explained how she "had every intention of garnishing his wages to be compliant with this letter, but once Michael said it wasn't him, and he brought to my attention that it was the wrong social, that's when I started to question if it was the correct Michael Soto." *Id.* at p. 47, ln. 21-25.

Ms. Brown and Mr. Soto called defendants many times to question the garnishment, but defendants would not call them back. Ms. Brown explains: "And again, I called Nelson & Kennard, and nobody called me back. And so when I sent that email to Michael, I had thought that it was the correct Michael Soto, and I had planned on garnishing until the subsequent events happened." *Id.* at p. 47, ln. 25 – p. 48, ln. 4. Ms. Brown understood the garnishment to be a serious matter and initially intended to garnish Mr. Soto's wages. *Id.* at p. 48, ln. 5-8. She understood Defendant N&K to be a debt collector, and it to be a debt that her employee, Michael Soto, may owe. *Id.* at p. 48, ln. 9-13. She understood that Plaintiff owed, or supposedly owed money to the defendants. *Id.* at p. 48, ln. 19-21.

Upon receiving the writ of garnishment, Mr. Soto's employer initially understood that he was a judgment debtor who owed money to defendants. *Id.* at p. 49, ln. 1-11. She also understood that she must garnish Plaintiff's wages and mail them to Defendant N&K. *Id.* at p. 49, ln. 12-14. It was only after a frantic Mr. Soto called and begged her to confirm the information before submitting its payment(s) that his employer stopped its normal process and started calling to confirm whether Defendants had the correct debtor. Exhibit G, Depo. of Michael Soto, pp. 36-37.

## DEFENDANTS' COLLECTION CAUSED PLAINTIFF HARM

Defendants issued a dunning Writ of Garnishment to Plaintiff's place of employment, Raising the Standard Consulting, Inc., on August 9, 2022. See Exhibit E to Defendants' Motion, Dkt. 82-2. Defendants then left the Writ of Garnishment outstanding at Plaintiff's place of employment for over a year.[1] Exhibit H. The Court docket shows it still hasn't been removed. Call after call from both Mr. Soto and his employer, Ms. Brown, were ignored or intentionally not responded to by N&K in direct contradiction to its standard procedures. When asked about N&K's protocol for such a situation, Attorney Jason Oliver explained:

> Q What is Nelson & Kennard's procedures when they are made aware that the wrong person's place of employment has received a garnishment?
> A. Well, we tell them to disregard the garnishment.
> Q. How do you tell them?

---

[1] Plaintiff respectfully requests the Court take judicial notice of Exhibit H attached to the CSF, and has concurrently filed a RJN as to the same.

A. By letter, or -- I don't know. It depends on how we are -- how that's communicated to us.

Q. Do they take any other steps?

A. We file a release of garnishee.

See attached Exhibit I, Depo. of Jason Oliver, p. 40, ln. 16-25. During Mr. Oliver's October 25, 2023 deposition, he confirmed that Defendants had not released the garnishment, some 15 months after Defendants had been issued it. *Id.* at p. 108, ln. 13-14. Defendants didn't call Plaintiff's employer, Ms. Brown, back until after this lawsuit was filed. *Id.* at p. 96, ln. 20 – p. 97, ln. 2. Defendants have not taken any steps to remove this from the public record. *Id.* at p. 97, ln. 15 – p. 98, ln. 1.

Defendants' Motion, based entirely in their assertions of (1) Plaintiff's employer verifying his place of employment and (2) Plaintiff *immediately* confirmed with his employer that the garnishment did not pertain to him, is premised on material facts that are clearly in dispute. Defendants' bold assertions do not change the facts presented in this matter.

Because Defendants would not call him back, Mr. Soto was filled with anxiety. Ex. G, Depo. of Michael Soto, p. 90, ln. 2-4.

## DEFENDANTS' WAGE GARNISHMENT AGAINST THE WRONG PERSON IS UNFAIR AND DECPTIVE AND VIOLATES HAWAI'I LAW

Defendants' garnishment notice violated the law. Haw. Rev. Stat. § 480–2(a) states, in pertinent part, "unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful." To recover under UDAP, a plaintiff must

generally prove: (1) a violation; (2) an injury to the plaintiff's business or property caused by the defendant's illegal conduct; and (3) damages. *Gurrobat v. HTH Corp.*, 133 Hawai'i 1, 21 (2014). Plaintiff's Second Amended Complaint explains:

> The acts of Defendants LVNV, Resurgent, and TRAK constitute violations of the Hawai'i Revised Statutes. Violations include, but are not limited to, collecting or attempting to collect any indebtedness alleged to be due by means of any threat, coercion, or attempt to coerce.

Dkt. 45, p. 13. As stated in his Second Amended Complaint, defendants' acts constitute violations of Hawaii's UDAP statute.

Defendants go on to claim their "Garnishment Notice … was based on the Judgment obtained against Debtor Michael Soto … and based on the employer's confirmation of employment." Memo., Dkt. 83-1, p. 10. Defendant doubles down that Plaintiff owed the debt and asserts that "[a]ll of the information in the Garnishment Notice was accurate, and Plaintiff does not allege otherwise." *Id.* Plaintiff has always alleged otherwise. See Second Amended Complaint, Dkt. 45, ¶ 54-63, 67, 85, 88, 91, 102, 103. The Garnishment Notice is levied againt the Michal Soto who works at Raising the Standard Consulting, the Plaintiff, not the debtor Michael Soto.

Even Defendants' collection attorney, Jason Oliver, acknowledged Mr. Soto was not the correct debtor to issue the garnishment upon.

> Q. Was the garnishment issued to the wrong place of employment?
> A. I don't know.
> Q. So does Nelson & Kennard believe that the judgment debtor, Michael Soto, worked for Raising the Standard?
> A. The judgment debtor? Well, I don't know that. It's possible, but I don't know.
> Q. You've now spoken with Kristine Brown. Do you believe still that this was the correct judgment debtor's place of employment?
> A. I know that the person to whom she gave the garnishment and who she focused the garnishment on and whose Social Security number did not match what was on the garnishment was not the right person.

Ex. I, Depo. of Jason Oliver, p. 53, ln. 5-20. It is disingenuous for Defendants to claim that "all of the information in the Garnishment Notice was accurate."

Defendant wrongfully claims that its garnishment was based on Plaintiff's employer's confirmation of employment. As explained above, and asserted in Stanford Brown's Declaration[2], Plaintiff's employer never verified Plaintiff's employment. Defendants' attempt to garnish from Plaintiff's wages and demand for payment in response to his dispute letter were attempts to collect a debt he never owed in violation of Hawaii's UDAP statute.

Mr. Soto has testified that he has suffered physical manifestations of emotional distress[3], was put on medication[4], had to pay for postage[5], was distracted and pre-occupied by anxiety due to the garnishment[6], leading to a serious failure in

---

[2] See attached Declaration of Stanford Brown.
[3] Ex. G, Depo. of Michael Soto, p. 130, ln. 21 – p. 131, ln. 8.
[4] Ex. G, Depo. of Michael Soto, p. 131, ln. 4-8.
[5] Exhibit 7 to Second Amended Complaint
[6] Ex. G, Depo. of Michael Soto, p. 90, ln. 2-4.

job performance that lead to him being taken to a police station and stripped of his

credentials[7], and even had his security clearance revoked (causing him to lose

weeks of wages) as a result of Defendants' collection efforts.[8] Defendants

downplay it and try to claim "his employer took no action against him as a result of

the Garnishment Notice"[9], but in fact he was suspended. Plaintiff testified at his

deposition:

> Q. Did your employer discipline you for taking your phone onto the job site?
> A. They did not officially discipline me, but by not assigning me anywhere else, sending me anywhere else, it was like an imposed suspension.
> Q. Were there other places where you could have worked during that time?
> A. They have other clients that needed SHHOs, yes.
> Q. So your reading of the situation that your employer did not reassigned you -- reassign you to another location, you interpreted that as being kind of an unofficial disciplinary action?
> A.  Yes, sir.

Ex. G, Depo. of Michael Soto, p. 72, ln. 4-16.

## <u>DEFENDANTS' ILLEGAL ACTIONS VIOLATE THE FDCPA</u>

In regards to the FDCPA, the Ninth Circuit has rejected the very argument

premise Defendants make here. "Congress designed the Federal Act to 'eliminate

the recurring problem of debt collectors dunning the wrong person or attempting to

---

[7] Ex. G, Depo. of Michael Soto, p. 67.
[8] Ex. G, Depo. of Michael Soto, p 70, ln. 2-8.
[9] Memo., Dkt. 83-1, p. 11.

collect debts which the consumer has already paid.'" See *Swanson v. S. Oregon Credit Serv., Inc.,* 869 F.2d 1222, 1225 (1988) (citing S. Rep. No. 382, 95th Cong. 2d Sess. 4, reprinted in 1977 U.S. Code Cong. & Admin. News 1695, 1699). Defendants were dunning Plaintiff, who did not owe the debt.

> Plaintiff is a consumer under the FDCPA:
>> The term "consumer," means "any natural person obligated *or allegedly obligated* to pay any debt." 15 U.S.C. § 1692a(3) (emphasis added). The words "alleged" and "allegedly" in these definitions are significant. They signify that persons who do not actually owe a debt—**including those who have been erroneously identified as judgment debtors**—are within the FDCPA's protections. *See, e.g., Dunham v. Portfolio Recovery Assocs., LLC,* 663 F.3d 997, 1002 (8th Cir. 2011) (reversing dismissal of FDCPA claim filed against debt collector who had "erroneously contacted the wrong "James Dunham."").

> *Gonzalez v. Law Firm of Sam Chandra, APC*, NO: 13-CV-0097-TOR, at *5-7 (E.D. Wash. Sep. 4, 2013) (emphasis added).

Defendants are requesting the Court ignore Congressional intent and overturn Ninth Circuit precedent. Again, Defendants' Motion is premised on the unsupported claims that his employer erroneously verified his employment[10] and immediately realized that the garnishment did not pertain to Plaintiff[11].

---

[10] Memo., Dkt. 83-1, p. 12.
[11] Memo., Dkt. 83-1, p. 16.

In *Swanson*, the Ninth Circuit explained that the least sophisticated debtor standard applied and even a debt collector's threat to convey any information regarding a debt directly or indirectly to debtor's employer … violated [the] Fair Debt Collection Practices Act section barring a debt collector from making a threat to take any action that cannot legally be taken. *Swanson v. S. Oregon Credit Serv., Inc.*, 869 F.2d 1222 (9th Cir. 1988). The Ninth Circuit explained:

> Section 1692e(5)[1] bars a debt collector from making a threat "to take any action that cannot legally be taken." Section 1692c(b)[2] prohibits a debt collector from "communicating" with most third parties, including a debtor's employer. Section 1692a(2) defines a "communication" as "the conveying of information regarding a debt directly or indirectly to any person through any medium."

*Swanson v. S. Oregon Credit Serv., Inc.,* 869 F.2d 1222, 1226 (9th Cir. 1988).

Here, Defendants not only threatened to convey information regarding a debt to Plaintiff's employer, they did convey information.

Defendants cite no Ninth Circuit authority to support their position. Instead, Defendants cite the unpublished decision of *Hedayati*[12], but in that case the defendant did  not receive any written dispute and the "Defendant *did* attempt on multiple occasions to confirm the debtor's information." *Hedayati v. Perry L. Firm*, No. SACV160846DOCDFMX, 2017 WL 4864491, at *4, *8 (C.D. Cal. Oct. 27,

---

[12] Memo., Dkt. 83-1, pp. 13-15.

2017). Here Mr. Soto did send a dispute letter and Defendant would not return his calls at all.

Defendants also cite to *Huy Thanh Vo v. Nelson & Kennard,* but they oddly leave off the last sentence of the section they cite. The full citation reads:

> Plaintiff does not allege that defendants sued him, took his default, and placed a lien on his property for reasons other than a mistaken belief that he owed the subject debt. If defendants had sued the right party, these would have been legal means to collect on a debt. As such, absent other facts, they cannot be interpreted as steps taken to harass, oppress, or abuse plaintiff. <u>On the other hand, a jury could find that defendants' failure to vacate the judgment, once they were informed of their error, was abusive.</u>
>
> Accordingly, the court will dismiss plaintiff's claim under 15 U.S.C. § 1692d, except as it relates to the failure of the bank to vacate the judgment.

*Huy Thanh Vo*, 931 F. Supp. 2d 1080, 1095 (E.D. Cal. 2013)(underline added).

Here, Nelson & Kennard, on behalf of the Defendants, failed to vacate the garnishment for over 15 months. Additionally, Plaintiff is not bringing a claim for harassment under 1692d. See Dkt. 45.

## **THE ELEMENTS OF INVASION OF PRIVACY ARE ESTABLISHED**

Defendants again base their defense of Plaintiff's privacy claim on the two disputed facts, and thus their Motion should again be denied. As explained above, Plaintiff's employer did not verify his employment or immediately know it wasn't him.

As for invasion of privacy, many courts have decided that improper conduct in knowingly and intentionally pursuing a person to force payment of a debt, whether or not he owes it, may, under certain circumstances, give rise to a right to damages for an invasion of privacy. This accords with the rule followed in recent years in most jurisdictions. Plaintiff cites only a few: *Montgomery Ward v. Larragoite*, 81 N.M. 383, 385; 467 P.2d 399, 401; 1970 N.M. LEXIS 1401 (1970) (re intrusion and wrongful lawsuits, citing *La Salle Extension University v. Fogarty*, 126 Neb. 457, 253 N.W. 424, 91 A.L.R. 1491 (1934); *Norris v. Moskin Stores, Inc.*, 272 Ala. 174, 132 So.2d 321 (1961); *Lyons v. Zale Jewelry Co*., 246 Miss. 139, 150 So.2d 154 (1963); *Biederman's of Springfield, Inc. v. Wright*, 322 S.W.2d 892 (Mo.1959); *Bowden v. Spiegel, Inc*., 96 Cal.App.2d 793, 216 P.2d 571 (1950); *Santiesteban v. Goodyear Tire & Rubber Co*., 306 F.2d 9 (5th Cir. 1962)). The record here is clear that Defendants attempted to garnish from someone they easily could have determined was not the correct debtor and then kept their garnishment open for over 15 months.

This Court recently recently recognized invasion of privacy as a private right of action. See *Warta v. Porter, McGuire, & Kiakona, LLP.*

This district court has stated:

> The Restatement (Second) of Torts §§ 652A–E (1977), recognizes a tort of invasion of privacy, and categorizes the tort into four types: (1) unreasonable intrusion upon the seclusion of another; (2) appropriation of another's name or likeness; (3) unreasonable publicity

given to the other's private life; and (4) false light. *Mehau v. Reed*, 76 Hawai'i 101, 111, 869 P.2d 1320, 1330 (1994); *Chapman v. Journal Concepts, Inc.*, 528 F. Supp. 2d 1081, 1099 (D. Haw. 2007).

*Warta*, 622 F. Supp. 3d 971, 989–90 (D. Haw. 2022)(citing *Singleton v. Bank of Am., N.A.*, Civil No. 14-00447 DKW-BMK, 2014 WL 6674569, at *4 (D. Hawai'I Nov. 25, 2014)).

The Court went on to explain:

> The Restatement (Second) of Torts defines the unreasonable-publicity tort as follows:
> One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that
> (a) would be regarded as highly offensive to a reasonable person, and
> (b) is not of legitimate concern to the public.

*Id.* (citing *Wilson v. Freitas*, 121 Hawai'i 120, 130, 214 P.3d 1110, 1120 (Ct. App. 2009), *as amended* (Aug. 4, 2009), Restatement (Second) of Torts § 652D (1977).

This Court went on to explain:

> When interpreting state law, federal courts are bound by decisions of the state's highest court. In the absence of such a decision, a federal court must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance.
>
> *Trishan Air, Inc. v. Fed. Ins. Co.*, 635 F.3d 422, 427 (9th Cir. 2011) (citations and internal quotation marks omitted). Because nothing in the HCRR precludes the pursuit of civil remedies for violations of the rules, and because the right to privacy is highly valued under Hawai`i state law, this Court predicts that the Hawai`i Supreme Court would hold that violations of the HCRR can be the basis of an invasion of privacy claim.

*Id.* at 992.

As previously stated, the invasion of privacy claim under Hawai`i law is based on the Restatement (Second) of Torts § 652D. See Wilson, 121 Hawai`i at 130, 214 P.3d at 1120. The comments to § 652D indicate that the requirement that the defendant's publication of the plaintiff's private matter "is of a kind that . . . would be regarded as highly offensive to a reasonable person," is a high standard.

Every individual has some phases of his life and his activities and **some facts about himself that he does not expose to the public eye, but keeps entirely to himself or at most reveals only to his family or to close friends**. …When these intimate details of his life are spread before the public gaze in a manner highly offensive to the ordinary reasonable man, there is an actionable invasion of his privacy, unless the matter is one of legitimate public interest.

 Restatement (Second) of Torts § 652D cmt. b. (emphasis added).

The rule stated in this Section gives protection only against unreasonable publicity, of a kind highly offensive to the ordinary reasonable man. The protection afforded to the plaintiff's interest in his privacy must be relative to the customs of the time and place, **to the occupation of the plaintiff** and to the habits of his neighbors and fellow citizens.

…

**It is only when the publicity given to him is such that a reasonable person would feel justified in feeling seriously aggrieved by it, that the cause of action arises.** Id., cmt. c. (emphases added).

*Id.* at 993-994.

if … the medical records that were (temporarily) publicly available in the State Court Case included information about the medical condition(s) that made it necessary for Warta to have an assistance animal, that may constitute information about an "unpleasant or disgraceful or humiliating illness[]," the disclosure of which may

support an invasion of privacy claim. See *SHOPO v. SPJ*, 83 Hawai`i at 398, 927 P.2d at 406 (quoting Restatement (Second) of Torts § 652D at 386, comment b).

*Id.* at 994-995. The defendant in Warta at least sealed the record, making it so they were only temporarily publicly available. Here, the record is still available for public viewing even today. This Court found that filings in a State Court proceeding can be an invasion of privacy.

On September 27, 2022, this Court decided:

> This Court finds that there are no genuine issues of material fact, and that PMK published information concerning Warta's private life in a manner that both "would be regarded as highly offensive to a reasonable person, and" was "not of legitimate concern to the public." See Restatement (Second) of Torts § 652D. This Court therefore concludes that, as a matter of law, Warta is entitled to summary judgment as to the issue of liability for Count III, his invasion of privacy claim. See Fed. R. Civ. P. 56(a)(citation omitted).

*Warta v. PMK*, CIVIL NO. 1:21-cv-00100 LEK-WRP, Dkt. 125. Just like in *Warta*, Defendants are attempting to use their egregious court filing to pressure payment.

Defendants still allege Plaintiff owes a debt in public filings. Those filings are still available in Hawaii's public court filing system today! Plaintiff's employment was told Plaintiff owed a debt, putting his career in jeopardy. Owing a debt, like committing a crime, is a serious matter with serious consequences. Such information would be found in a background check. Defendants' cavalier

assertions that Michael Soto who works at Raising the Standard Consulting is subject to collection is highly offensive to a reasonable person.

> "Publicity," … means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge. The difference is not one of the means of communication, which may be oral, written or by any other means. It is one of a communication that reaches, or is sure to reach, the public.

Restatement (Second) of Torts § 652D (1977). Herein Defendants publicly filed a writ of garnishment identifying Plaintiff and his place of employment. Defendants mailed the Writ of Garnishment to Plaintiff's employer where it was seen by his employers and other staff. Defendants then left the Writ of Garnishment in the public domain for over 15 months before releasing it. Defendants still have not withdrawn, sealed, or otherwise requested the Writ of Garnishment be removed from public viewing. When asked about it, LVNV's corporate representative admitted that it had no right to garnish from Plaintiff, but admit they filed the Writ of Garnishment in a public forum as a public record.

> Q. Does LVNV have any right to garnish from plaintiff?
> A. No.
> Q. Does LVNV have any right to publicly assert that Michael Soto that works for Raising the Standard is a judgment debtor?
> A. I think they didn't do that. But I don't know what kind of rights they have. I would disagree that that was what was done here.
> Q. Was the writ of garnishment filed in a public forum?
> A. It was filed in the court. I don't know -- if you consider that a public forum, then yes.

Q. Is the writ of garnishment available for pick up at the court?
A. I don't know.
Q. Isn't it a public record?
A. I don't know. I assume so.
Q. Are court filings public unless they're sealed?
A. I think so.
Q. LVNV was attempting to garnish from the wrong person, wasn't it?
A. It was attempting to garnish the right person, but -- I don't know.

Ex. I, Depo. of Jason Oliver, p. 92.Plaintiff requests the Court deny Defendants' motion to dismiss his invasion of privacy claim.

## CONCLUSION

Material facts are in dispute. Mr. Soto's employer Stanford Brown says he never verified Mr. Soto's employment. Kristine Brown stated throughout her deposition that she fully intended to garnish Mr. Soto's wages and comply with the Writ of Garnishment. They were left with no option but to call time and time again when Defendants would not release the garnishment, or return the calls. The garnishment is still part of the public record today.

Mr. Soto has endured over a year of anxiety, been detained by police, temporarily lost his security clearance, had his career put in jeopardy, been prescribed medication, and incurred other costs due to Defendants' attempts to collect a debt he never owed. Throughout their Motion, Defendants blame Mr. Soto's employer, or Mr. Soto himself for their conduct. No innocent person should have to work this hard to clear their name.

Mr. Soto requests the Court deny Defendants' Motion for Summary

Judgment and enter Partial Summary Judgment in his favor. Thank you.


DATED: Honolulu, Hawaii, October 4, 2024.

*/s/ Justin A. Brackett*
Justin A. Brackett, Esq.
*Attorney for Plaintiff*