STARN • O'TOOLE • MARCUS & FISHER
A Law Corporation

ANDREW J. LAUTENBACH        8805-0
KUKUI CLAYDON               10378-0
733 Bishop Street, Suite 1900
Pacific Guardian Center, Makai Tower
Honolulu, Hawaii 96813
Telephone: (808) 537-6100
alautenbach@starnlaw.com
kclaydon@starnlaw.com

YU MOHANDESI LLP
BEN MOHANDESI *(pro hac vice)*
633 West Fifth Street, Suite 2800
Los Angeles, California 90071
Telephone: (213) 377-5505
Email: bmohandesi@yumollp.com

Attorneys for Defendants
LVNV Funding, LLC; Resurgent Capital Services L.P.;
Nelson & Kennard, Attorneys at Law; and
Data Search NY Inc. d/b/a TRAKAmerica

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MICHAEL SOTO, | Civil No. 1:23-cv-00181-DKW-KJM |
| Plaintiff, | **DEFENDANTS LVNV FUNDING, LLC, RESURGENT CAPITAL SERVICES L.P., AND NELSON & KENNARD, ATTORNEYS AT LAW'S REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR SUMMARY ADJUDICATION OF ISSUES; CERTIFICATE OF SERVICE** |
| v. | |
| LVNV FUNDING, LLC; NELSON & KENNARD, ATTORNEYS AT LAW; RESURGENT CAPITAL SERVICES, L.P.; and DATA SEARCH NY, INC. d/b/a TRAKAMERICA, | |
| Defendants. | |

## I. **INTRODUCTION**

Plaintiff[1] cannot change the basic facts underlying Defendants' Motion: N&K obtained a legitimate judgment against Debtor Michael Soto on LVNV's behalf; the Garnishment Notice correctly identified Debtor Michael Soto by his social security number and address, but was issued to Plaintiff's employer based on an erroneous VPOE; the Garnishment Notice was never acted upon due to Plaintiff's realization that the Garnishment Notice did not pertain to him; and no Defendant took any steps to enforce the judgment against Plaintiff. These undisputed facts render Plaintiff's claims meritless as a matter of law.

Nevertheless, Plaintiff seeks to create issues of fact where there are none through vague not-quite-denials, misrepresentation and exaggeration of the evidence, and the use of dramatized language unsupported by the facts or the law (*e.g.*, "co-conspirator," "enabler," equating owing a debt with committing a crime). Plaintiff's brief, however, is devoid of substantive arguments that justify the denial of Defendants' Motion. Moreover, none of the arguments raised by Plaintiff meets Plaintiff's burden of establishing the existence of the elements essential to Plaintiff's case, as required by law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Accordingly, Defendants respectfully request that this Court dismiss all claims against Defendants and enter judgment in Defendants' favor.

---

[1] This Reply utilizes the same defined terms as Defendants' Motion [Dkt. 83].

1

## II.  ANALYSIS

In response to a summary judgment motion where a plaintiff bears the ultimate burden of proof, "the plaintiff must present *affirmative evidence* in order to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986) (emphasis added); *Galen v. Cnty. of Los Angeles*, 477 F.3d 652, 658 (9th Cir. 2007) (a plaintiff "must present affirmative evidence to make this showing", "bald assertions that genuine issues of material fact exist are insufficient", and a "'mere scintilla of evidence' … is insufficient to withstand summary judgment."). Plaintiff fails to meet this burden.

### A.  Plaintiff Fails to Establish Agency

Plaintiff argues, without support, that "Defendants are debt collectors with cascading principal-agent relationships," and improperly incorporates by reference arguments made in his Motion for Partial Summary Judgment. (Dkt. 86). Yet, even taking into account the arguments made in Plaintiff's motion, Plaintiff fails to establish that an agency relationship exists between the Defendants.

Plaintiff does not engage in *any* legal analysis to establish the existence of such a relationship. Instead, Plaintiff merely makes conclusory statements that "Resurgent, TRAK, and N&K are the surrogates/agents of LVNV" (Dkt. 86, p. 5) and the above-mentioned assertion that Defendants have "cascading principal-agent relationships" (Opp., p. 4). This is insufficient to meet Plaintiff's burden of proof.

B. **Plaintiff Fails to Establish Disputed Material Facts**

Plaintiff argues that Defendants' Motion "should be denied because the facts upon which their arguments lay are disputed." (Opp. p. 4). Plaintiff focuses on two "disputed" facts: (1) Defendants' alleged assertion that "they were authorized to pursue garnishment from Plaintiff because Plaintiff's employer verified his place of employment;" and (2) Defendants' assertion that "Mr. Soto immediately recognized it was not his debt and immediately confirmed that to his employer." (*Id.*.) Plaintiff claims that these facts are contradicted by Plaintiff's testimony and his stress, and the testimony of RTSC's owner, Stanford Brown. (*Id.*)

However, Plaintiff's evidence is insufficient to create a material issue of fact. RNN's contemporaneous business records establish that RNN called RTSC at 808-426-3464 on June 28, 2022 and spoke with Stanford Brown, President of RTSC, to inquire if Michael Soto, with a social security number ending in 4238 was an employee of RTSC. (CSF No. 7). During that phone call, Mr. Brown confirmed that Michael Soto, with social security number ending in 4238 (i.e., *Debtor Michael Soto*), was an employee of RTSC. (CSF No. 8). It was based on this confirmation that N&K prepared the Garnishment Notice.

In response, Plaintiff has submitted a declaration from Mr. Brown in which he does not deny that the employment verification call took place, but instead states that he does "not recall" such a phone call. (Declaration of Stanford Brown (Dkt.

3

92-1] ("**Brown Decl.**"), ¶ 4). Mr. Brown further states that RTSC's records do not have a record of the employment verification call. (*Id.* at ¶ 5). While this might establish that Mr. Brown does not keep a written record of his incoming calls, it does *not* establish that the 2022 employment verification call did not take place.

Plaintiff also takes issue with Defendants' characterization that Plaintiff "immediately" recognized that the Garnishment Notice did not pertain to him and "immediately" relayed that information to his employer. But, the evidence is clear: Plaintiff testified that when he first reviewed the Garnishment Notice, he noticed that it pertained to a "Michael Soto" with a different social security number than his. (CSF, No. 12). Once he realized that, Plaintiff immediately informed his employer, RTSC (specifically, its co-owner Kristine Brown), that the Garnishment Notice did not pertain to him and contained a different social security number. (CSF No. 17).

Plaintiff argues that Ms. Brown "intended to comply with" the Garnishment Notice" and "garnish [Plaintiff's] wages," (Opp. p. 6), but that does not change the fact that, as soon as she informed Plaintiff of the Garnishment Notice, he called her

the same day and told her it did not pertain to him (CSF No. 17; Opp. p. 7).[2] Nor does it change the fact that Ms. Brown believed and accepted Plaintiff's assertion and, as a result, no money was ever withheld from Plaintiff's wages. (CSF No. 18). Indeed, Plaintiff's own evidence demonstrates that his employer did not garnish his wages because Plaintiff "brought to [his employer's] attention that it was the wrong social." (Opp. p. 6 (citing Deposition of Kristine Brown)).

      Finally, Plaintiff argues that his alleged damages create an issue of material fact. Plaintiff's argument is not entirely clear nor material to the Motion, but it is nonetheless unavailing. First, Plaintiff places great weight on the idea that N&K did not file a release of garnishee until after Plaintiff filed his lawsuit. (Opp. pp. 7-8.) However, it is not surprising that N&K had not filed a Release of Garnishee, because it was not required by Hawaiʻi law where there was no court order regarding the garnishment and nothing to release. *See* HRS Chapter 652. In addition, the fact that N&K did not file an (unnecessary) Release of Garnishee does not create a material issue of fact as to whether Plaintiff's employer erroneously confirmed Debtor

---

[2] While Plaintiff states that he was "frantic" and "called and begged" Ms. Brown to confirm the information, the cited evidence does not support this dramatic characterization. (Plaintiff's Ex. G [ECF Doc. No. 92-3] 36:14-25 ("When she sent me the documents in the email, I started looking at it and reviewing it closely, and then I noticed that the last four digits … wasn't mine. And then I looked at the address and I said this is not even my address… just out of, you know, my work, my experience of dealing with legal documents, and I noticed these mistakes. So I definitely brought it to Kristine's attention…").)

Michael Soto's employment or whether Plaintiff knew that the Garnishment Notice did not pertain to him upon his initial review of the documents. The same is true for Plaintiff's claim that he was "filled with anxiety." (Opp. p. 8.) Even if true, this statement does not create a dispute of material fact.

### C. Defendants Are Entitled to Summary Judgment on Plaintiff's UDAP Claims

Plaintiff's argument regarding his UDAP claim is based entirely on his theory that "Defendants' garnishment notice violated the law." (Opp. p. 8). Plaintiff does not include any legal analysis to explain how the Garnishment Notice violated the law. In addition, Plaintiff misrepresents Defendants' argument on summary judgment. Specifically, Plaintiff falsely states that "Defendant doubles down that Plaintiff owed the debt and asserts that '[a]ll of the information in the Garnishment Notice was accurate, and Plaintiff does not allege otherwise.'" (Opp. p. 9.) Defendants never claimed that Plaintiff owed the subject debt, and certainly did not make such an argument in their Motion. Instead, Defendants state the indisputable fact that the Garnishment Notice correctly identifies *Debtor Michael Soto* by the last four digits of his social security number his mailing address, and that the only reason the employer was identified as RTSC was Mr. Brown's erroneous verification.

Further, Plaintiff's statement that the Garnishment Notice was "levied against the Micha[e]l Soto who works at Raising the Standard Consulting, the Plaintiff, not the debtor Michael Soto" (Opp. p. 9) is directly contradicted by the evidence. Again,

the Garnishment Notice on its face identifies Debtor Michael Soto by the last digits of his social security number and his mailing address – neither of which belongs to Plaintiff. There was no attempt to collect from Plaintiff.

Accordingly, Plaintiff cannot establish that Defendants violated UDAP, which requires Plaintiff to prove: (1) a violation; (2) an injury to the plaintiff's business or property caused by the defendant's illegal conduct; and (3) damages. *Gurrobat v. HTH Corp.*, 133 Hawai'i 1, 21 (2014). Plaintiff cannot prove the alleged violations of HRS Sections 443B-15, 44B-17, and 443B-18(5) because there is no evidence that Defendants collected a debt through threat and coercion, unreasonable publication, or the use of fraud and misrepresentation.

There was no threat or coercion, and no false, deceptive, or misleading representation in the Garnishment Notice, as the Garnishment Notice accurately identified Debtor Michael Soto. (CSF No. 10). Indeed, Plaintiff immediately knew that the Garnishment Notice did not pertain to him. (CSF Nos. 11-12). Plaintiff cannot transform a legal attempt to enforce the Judgment against Debtor Michael Soto into a violation of UDAP. *See Gurrobat*, 133 Hawai'i at 21 (recovery under UDAP requires illegal conduct by the defendant).

Plaintiff also references an alleged "demand for payment in response to his dispute letter." (Opp. p. 10.) No such demand occurred. Plaintiff sent a dispute letter in which he requested verification of the subject debt. (CSF Nos. 14-15). N&K was

7

required by law to respond to Plaintiff's request for verification and did so, sending a letter that provided the statutorily required information regarding the Account. (CSF No. 8; *see also* Second Amended Complaint, Ex. 8 [Dkt. 45-8]), Even a cursory review of the letter reveals that it does not contain a "demand for payment." (*Id.*).

Plaintiff's attempt to establish damages is similarly unsuccessful. In reality, Plaintiff cannot prove that he was injured in his business or property by Defendants' conduct, as his wages were never withheld, and his employer took no action against him as a result of the Garnishment Notice. (CSF. Nos. 17-18.) Plaintiff cannot establish causation between the Garnishment Notice (which Plaintiff immediately knew did not pertain to him) and his alleged damages, which were supposedly due to his own "distraction." For example, Plaintiff claims that he was suspended from his job and the police were called, but as Plaintiff admits, these events occurred because Plaintiff took a prohibited mobile device to a job site, not because of the Garnishment Notice. (Plaintiff's Ex. G, 67:2-15.) Defendants are entitled to summary judgment on Plaintiff's UDAP claims.

### D. **Defendants Are Entitled to Summary Judgment on All FDCPA Claims**

In support of his FDCPA claims, Plaintiff argues that Defendants are requesting that the Court "overturn Ninth Circuit precedent," relying on *Swanson v. S. Oregon Credit Serv., Inc.*, 869 F.2d 1222 (9th Cir. 1988). (Opposition, p. 12.) Plaintiff further argues that Defendants' Motion "is premised on the unsupported

8

claims that his employer erroneously verified his employment and immediately realized that the garnishment did not pertain to Plaintiff." (*Id.*)

First, Defendants do not rely upon "unsupported claims." As discussed above and in the moving papers, the evidence establishes that: (1) the Garnishment Notice is based on a legal and enforceable judgment obtained against Debtor Michael Soto; (2) the Garnishment Notice identifies Debtor Michael Soto by his social security number and address; (3) the Garnishment Notice was issued after RTSC erroneously verified Debtor Michael Soto's employment; (4) Plaintiff recognized that the Garnishment Notice did not pertain to him upon his initial review of the document; and (5) Plaintiff immediately called Kristine Brown and informed her that the Garnishment Notice did not pertain to him and, as a result, no wages were garnished. (CSF Nos. 5-8, 10-12, 17-19). Accordingly, Plaintiff's FDCPA claims fail because there is no evidence of any false, deceptive, or misleading representations related to the debt or attempt to collect the debt. In fact, there was no attempt to collect any debt owed by Plaintiff.

Second, Defendants do not ask this Court to overturn Ninth Circuit precedent. In truth, Plaintiff's reliance on *Swanson* is misguided, as it has no bearing on this case. In *Swanson*, the Ninth Circuit found that a debt collector violated the FDCPA by failing to provide a debtor with a thirty-day period to dispute the debt. *Swanson*, 869 F.2d at 1226 ("Congress designed section 1692g to provide alleged debtors with

30 days to question and respond to the initial communication of a collection agency. The form used by Southern Oregon in this case invokes a shorter response period, promising harm to the debtor who waits beyond 10 days."). In addition, the court found the debt collector violated the FDCPA by sending the debtor a notice "which stated: 'Unless payment in full or definite arrangements are made on your account(s) within 48 hours a complete investigation will begin concerning your employment and assets.'" *Id.*) The *Swanson* court held that the least sophisticated consumer might construe the statement as a threat to contact the consumer's employer and, "[b]ecause section 1692c(b) prohibits such unconsented and unauthorized communication with a debtor's employer concerning the debt, the threat constitutes a 'threat to take any action that cannot legally be taken.'" *Id.* at 1227.

　　None of the above is relevant to the case at hand, in which a Garnishment Notice pertaining to the correct debtor, and which correctly identified the debtor by his social security number and address, was inadvertently sent to the wrong employer. However, the cases within the Ninth Circuit that *do* address analogous situations hold that mistaken attempts to collect a debt against the wrong person do not violate the FDCPA. *Huy Thanh Vo v. Nelson & Kennard*, 931 F. Supp. 2d 1080, 1095 (E.D. Cal. 2013) (no FDCPA violation where "defendants sued [plaintiff], took his default, and placed a lien on his property" based on their "mistaken belief that he owed the subject debt," when it really belonged to his brother); *Hedayati v. Perry L.*

10

*Firm*, 2017 WL 4864491 at *1, *8 (C.D. Cal. Oct. 27, 2017) (no FDCPA violation where the defendant mistakenly sued the plaintiff with a debt collection lawsuit, "mistakenly believing [him] to be debtor 'Mohammad Hedayati,' who was actually [his] brother," and noting that "[e]ven the least sophisticated debtor knows his own address and can understand that, if he receives debt collection notices that list an address he doesn't recognize and a name similar to his own, that the debt collector likely has the wrong individual.").³ Here, as soon as Plaintiff reviewed the Garnishment Notice, he knew that he did not owe the debt and that the Garnishment Notice had been served on the wrong employer. (CSF No. 12).

Plaintiff attempts to distinguish *Hedayati* by arguing that the plaintiff therein did not send a dispute letter, while Plaintiff did and "Defendant would not return his calls at all." (Opp. pp. 13-14.) Plaintiff's argument is unavailing, as the *Hedayati* court specifically found that there was no FDCPA violation even though the defendant "continued to target Plaintiff with its debt collection efforts even after Plaintiff notified Defendant that he was not the debtor." 2017 WL 4864491 at *8.

---

³ As noted in the moving papers, courts across jurisdictions have also repeatedly held that mistakenly attempting to collect a debt from the wrong person is not an FDCPA violation. *See Bleich v. Revenue Maximization Grp., Inc.*, 233 F. Supp. 2d 496, 500 (E.D.N.Y. 2002); *Reed v. AFNI, Inc.*, 2011 WL 112430, at *2 (D. Utah Jan. 13, 2011); *Gonzalez v. Erskine*, 2008 WL 6822207, at *3 (S.D. Fla. Aug. 7, 2008); *Blauer v. Zucker, Goldberg, & Ackerman, LLC*, 2011 WL 1113280, at *3 (D. Del. Mar. 24, 2011).

Plaintiff does not attempt to distinguish *Huy Thanh Vo*, but instead suggests that Defendants intentionally omitted a quotation from the case indicating that "a jury could find that defendants' failure to vacate the judgment, once they were informed of their error, was abusive." (Opp. p. 14 (quoting *Huy Thanh Vo*, 931 F. Supp. 2d at 1095).) Plaintiff then attempts to link this statement with N&K's alleged failure "to vacate the garnishment for over 15 months. (*Id.*). This case, however, does not involve any judgment entered against Plaintiff. Instead, there is a lawful judgment entered against Debtor Michael Soto that does not require vacating. Nor can the Garnishment Notice be equated with a judgment. The Garnishment Notice does not involve any enforceable order entered by a court of law that would require an employer to comply with the Notice. Instead, it is based on an affidavit of the amount due and the underlying judgment (which, again, was lawfully obtained against Debtor Michael Soto). Under Hawaii law, N&K was not required to file a Release of Garnishee. Haw. Rev. Statutes, Chapter 652. Accordingly, the fact that it did not immediately do so cannot establish a violation of the FDCPA.

### E.  **Defendants Are Entitled to Summary Judgment on Plaintiff's Invasion of Privacy Claim**

Plaintiff argues that Defendants' motion for summary judgment as to his invasion of privacy claim should be denied because it is based "on the two disputed facts…. As explained above, Plaintiff's employer did not verify his employment or immediately know it wasn't him." (Opp. p. 14). Plaintiff also argues that his privacy

12

has been invaded because Defendants have not attempted to ask the court in the Collection Action to seal the Garnishment Notice, equating "[o]wing a debt" with "committing a crime." (*Id.* at pp. 18-20.) Plaintiff's argument is without factual or legal merit.

As an initial matter and as discussed thoroughly above, it is well established that RTSC erroneously verified Debtor Michael Soto's employment, and that Plaintiff very quickly notified his employer that the Garnishment Notice did not pertain to Plaintiff. Moreover, Defendants are entitled to summary judgment on this claim because Plaintiff does not establish that Defendants publicized any matter regarding Plaintiff with "'knowledge of ... or reckless disregard as to the falsity of the publicized matter …, which would be 'highly offensive to a reasonable person.'" *Chung v. McCabe Hamilton & Renny Co.*, 109 Hawai'i 520, 534 (2006) (internal citation omitted).

First, the Garnishment Notice itself was correctly issued against Debtor Michael Soto – *i.e.*, it was not false. (CSF Nos. 1, 5, 10). Second, the Garnishment Notice on its face pertained to Debtor Michael Soto with Debtor Michael Soto's social security number – *i.e.*, it was not a publication pertaining to Plaintiff. Thus, Plaintiff's argument that "Defendants publicly filed a writ of garnishment identifying Plaintiff" is false.

Third, Defendants had no reason to suspect that Plaintiff was the wrong "Michael Soto," because RTSC erroneously confirmed Debtor Michael Soto's employment. (CSF No. 6-9.) Thus, Plaintiff cannot establish that Defendants had 'knowledge of ... or reckless disregard as to the falsity of the publicized matter." *Chung*, 109 Hawai'i at 534.

Fourth, even if the Garnishment Notice pertained to him, Plaintiff has not and cannot establish "publicity," which means that "the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Farmer ex rel. Keomalu v. Hickam Fed. Credit Union*, 122 Hawai'i 201 (table), 2010 WL 466007 at *12 (Ct. App. 2010), *as corrected* (Feb. 23, 2010) (quoting Restatement (Second) of Torts, § 652D comment a). Here, the Garnishment Notice was sent only to his employer, and "it is not an invasion of the right of privacy … to communicate a fact ... to a single person or even to a small group of persons." *Id.* (upholding dismissal of invasion of privacy claim based on statements "confined to [plaintiff's] employees").

Further, although Plaintiff does not address the point in his Opposition, it bears repeating that the Garnishment Notice stems from a valid Judgment issued by a Court and is an authorized means to collect an outstanding debt. As such, the statements made in these legal documents were privileged, *even if deemed to be*

14

*false*, because N&K was "reasonably act[ing] in the discharge of some public or private duty, legal, moral, or social, and where the publication concerns subject matter in which the author has an interest and the recipients of the publication a corresponding interest or duty." *Farmer ex rel. Keomalu*, 2010 WL 466007 at *10-11.

Finally, Plaintiff completely fails to address Defendants' discussion regarding his inability to establish an invasion of privacy claim is based upon intrusion upon seclusion, apparently conceding the point. Accordingly, Plaintiff's invasion of privacy claim fails as a matter of law.

### III.   CONCLUSION

Based on the foregoing, as well as the arguments set forth in the moving papers, Defendants respectfully request that this Court grant summary judgment in their favor on each Count alleged in Plaintiff's SAC. In the alternative, Defendants seek partial summary judgment.

DATED: Honolulu, Hawaii, October 11, 2024.

>   */s/ Andrew J. Lautenbach*
>   ANDREW J. LAUTENBACH
>   KUKUI CLAYDON
>   BEN MOHANDESI (admitted pro hac vice)
>   Attorneys for Defendants
>   LVNV Funding, LLC; Resurgent Capital Services, L.P.; Nelson & Kennard, Attorneys at Law; and Data Search NY Inc. d/b/a TRAKAmerica

15